IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 8-037-JJF |
| IRA BLAND, | : | |
| Defendant. | : | |

**DEFENDANT BLAND'S ANSWERING BRIEF IN SUPPORT OF HIS
MOTION TO SUPPRESS EVIDENCE**

Defendant, Ira Bland, by and through his counsel, Christopher S. Koyste, hereby files this Answering Brief in support of his Motion to Suppress Evidence, in response to the Government's Ausgust 25, 2008 post-hearing brief. In this Brief, the Defense asserts that at the August 13, 2008 suppression hearing: (1) Sufficient facts were not elicited at the hearing to demonstrate a reasonable belief that Mr. Bland could have been involved in criminal activity, which is required by Terry v. Ohio, 392 U.S. 1, 10 (1967); (2) Officer DeBonaventura failed to sufficiently "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the frisk of Defendant. United States v. Hall, 193 Fed. Appx. 125, 128 (3rd Cir 2006); (quoting Terry, 392 U.S. at 27.)

## **DEFENDANT'S PROPOSED FINDING OF FACTS**[1]

During the daylight hours of February 9, 2008 a Wilmington Police Department dispatcher radioed to police officers that the suspect of a December 31, 2007 murder was at 12th and Bowers Streets in Wilmington. (See page 5 of the Transcript of the August 13, 2008 hearing, referred to herein as "T") Thus, Wilmington police officers were not told that there was a warrant for this alleged suspect, or that he was armed or engaged in a crime. Additionally, the tipster was not indicated to be past proven reliable. Prior to arriving at the scene Officer DeBonaventura heard the radio call of Sergeant George Taylor who asked a question of Sergeant Donovan of the Wilmington Police Department of whether we had a murder the evening of December 31st, as was reported by the complainant. (See T-25) It is undisputed that Sergeant Donovan radioed back that he was on call on that evening, and he commented simply, "no" to the question. (See T-25) Thus, Sergeant Donovan's answer of "no" directly refuted the allegation made by the tipster.

When law enforcement approached the scene they found the tipster, Mr. Coverdale acting frantic (T-9) claiming that Mr. Bland had shot his son. There was no allegation of current criminal conduct and there was no current criminal conduct, or any suspicious activity, observed by the responding Wilmington Police Officers. At the scene, there was no claim by Mr. Coverdale that Mr. Bland was armed, that he was in the act of committing a crime, or that there was any warrant to arrest him. Furthermore, Mr. Coverdale was not known to be a past proven reliable informant to the responding Wilmington Police Officers. (T-29-30) Before taking an opportunity to gather facts to

---

[1] Mr. Bland limits the facts proposed to those that are required to be determined in order to rule on the issues outlined by the Defense.

2

potentially support a Terry stop, law enforcement approached Mr. Bland, ordered him out of his car, and seconds later conducted a Terry frisk. (T-26-28) Officer DeBonaventura testified at the suppression hearing that he wanted "to make sure that the area was secure for my safety", that he "didn't know if he (Mr. Bland) had a weapon on him or not" and that he "wanted to verify his identity and make sure he didn't have a weapon on him at the time." (T-17) When Officer DeBonaventura thought that Mr. Bland could have been armed, he replied "I don't know", "I took it as yes", "That's the way I approached the suspect, yes, that he was armed." (T-19) Officer DeBonaventura waited until he had other police officers with him when he approached Mr. Bland, who did not try to run, and did not say anything. (T-21) When approaching Mr. Bland Officer DeBonaventura understood that they was no exigency in the situation. (T-27) Although given numerous opportunities by both the Defense and the Government, during the suppression hearing Officer DeBonaventura failed to articulate specific facts that could have lead him to believe that Mr. Bland was armed, or that criminal activity was afoot.

**I      Office DeBonaventura's testimony does not satisfy the Terry standard in that he failed to state a reasonable and articulable basis for believing that Mr. Bland was involved in a crime and that could have been armed.**

**A. Terry Stop.** It is apparent that Office DeBonaventura's actions on February 9th were based upon a hunch, and not a reasonable suspicion based upon the totality of the circumstances. In United States v. Arvizu, 534 U.S. 266, 273-74 (2002) the United States Supreme Court clarified Terry by providing clear guidance for district court's making Terry determinations. The Supreme Court noted that "(w)hen discussing how reviewing courts should make reasonable suspicion determinations, we have said repeatedly that they must look at the totality of the circumstances of

each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information. An officer's reliance on a mere hunch is insufficient to justify a stop." Id.

The only fact that the Government can point to is Mr. Coverdale's knowledge of where Mr. Bland was, and what Mr. Bland was wearing. But there was no indication that Mr. Bland was about to do anything criminal, and there was no objective evidence that Bland had committed a crime, homicide or otherwise, that would support a Terry stop and frisk. The Third Circuit in Johnson v. Campbell noted that "(a) tip is not reliable merely because its description of the suspect's visible attributes prove accurate. Reasonable suspicion requires that the tip be reliable in its assertion of illegality, not just in its tendency to identify a person." Johnson v. Campbell, 332, F.3d 199, 210 (3rd Cir 2003). Furthermore, Mr. Coverdale's subjective beliefs and claims were not supporting by any evidence whatsoever, and were effectively refuted. The Third Circuit also noted in Johnson v. Campbell that "(o)ne citizen's "subjective feelings are not enough to justify the seizure of another where the objective facts do not point to any articulable basis for suspicion." Id. Thus, it is apparent that there was not sufficient information to satisfy the Terry standard for either the stop or the frisk of Mr. Bland.

In it's Opening Brief the Government cited United States v. Torres, 534 F.3d 207, 210-11 (3rd Cir. 2008) which stands for the premise that a district court "must look beyond the specific facts known to the officers on the scene to the facts known to the dispatcher". However, Torres simply does not help the Government to meet its burden in this case. There was no indication to the dispatcher by Coverdale that he witnessed the shooting of his son, or why he believed that Mr. Bland

4

was the person who shot his son. This was not expressed in the 911 call or when officers arrived on the scene, as they headed straight for Mr. Bland and did not talk to Coverdale first. Furthermore, Coverdale did not witness any recent criminal activity, Coverdale's tip was not the result of face-to-face interaction with police, and the tip does not predict what will follow. Moreover, Mr. Bland was not nervous or evasive, nor was he on the street at a late hour, as Officer DeBonaventura testified that it was "daylight" when he responded to the tint shop and the area was well illuminated. (T-19)

If the court were to look beyond the facts known to the officers on the scene to the facts known by the dispatcher, the officers' conduct would still not be justifiable. The totality of the circumstances must be examined. And those circumstances include the fact that Officer DeBonaventura heard Sergeant Donovan indicate that there was not a murder on December 31, 2007. Additionally, Officer DeBonaventura knew that the homicide was not immediate, and when they arrived on the scene, Mr. Bland was sitting calmly in his car while Coverdale was acting frantic. In fact, Coverdale gave a veiled threat to the dispatcher when he angrily demanded that police officers get to the scene "before I do something." (911 call, second page).

  **B. Terry Frisk**. The Supreme Court noted in Terry that in order for law enforcement to justify "the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." United States v. Hall, 193 Fed. Appx. 125, 128 (3rd Cir 2006), Terry, 392 U.S. at 21. Terry and its progeny put the burden of clearly articulating an objective reason to believe that a suspect is armed, as a precursor to a frisk, solely on the Government. See Ybarra v. Illinois, 444 85, 92-93 (1979); United States v. Ritter, 416 F.3d 256, 268-269 (3rd Cir. 2005). However, it is apparent that Officer DeBonaventura's simply failed to articulate a reason to believe that Mr. Bland

5

was armed and merely stated conclusions, not facts, and a hunch. When asked by the Government if when he approached Mr. Bland whether he thought that Mr. Bland was armed, Officer DeBonaventura replied:"I don't know", "I took it as yes", "That's the way I approached the suspect, yes, that he was armed." (T-19) None of these comments satisfy the requirement's of Terry and are the exact kind of "unparticulized suspicion or hunch" which is in violation of Terry. Terry, 392 U.S. at 27; United States v. Sokolow, 490 U.S. 1, 7 (1989). Thus, it is apparent that this Court must find that the Government has failed to meet its burden of proof to establish a basis to perform a Terry frisk.

    **WHEREFORE**, Mr. Bland requests this Court to hold that he was both stopped and frisked in violation of Terry, and order the suppression of the firearm seized as a fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963).

    /S/
Christopher S. Koyste, Esquire
709 Brandywine Boulevard
Bellefonte, Delaware  19809
(302) 762-5195
Email: ckoyste@koyste.com
Attorney for Ira Bland

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 8-037-JJF |
| | : | |
| IRA BLAND, | : | |
| | : | |
| Defendant. | : | |

## **CERTIFICATE OF SERVICE**

Undersigned Counsel certifies that the attached Answering Brief of Mr. Bland is available for public viewing and downloading and was electronically delivered on September 3, 2008 to:

John C. Snyder, Esquire
Assistant United States Attorney
United States Attorney's Office
1007 Orange Street, Suite 700
Wilmington, Delaware 19801

/S/
Christopher S. Koyste, Esquire
709 Brandywine Boulevard
Bellefonte, Delaware 19809
(302) 762-5195
Email: ckoyste@koyste.com
Attorney for Ira Bland